UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BAY AREA SURGICAL MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PRINCIPAL LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No.: 5:12-cv-01140 EJD <br><br> **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> **(Re: Docket No. 20)** |

Pending before the court is Defendant Principal Life Insurance Company's ("Principal") motion to dismiss Plaintiff Bay Area Surgical Management, LLC's ("Bay Area") First Amended Complaint ("FAC"). The court found this motion suitable for determination without oral argument. See Civil L.R. 7-1(b). For the reasons discussed below, the motion to dismiss is GRANTED.

## I. BACKGROUND

The FAC alleges five causes of action against Principal: (1) breach of contract, (2) violation of California Unfair Competition Laws ("UCL"), California Business & Professions Code § 17200 et seq., (3) Negligent Misrepresentation, (4) Promissory Estoppel, and (5) Equitable Estoppel. In support of Bay Area's claims under these causes of action, Bay Area alleges the following facts in the FAC. See Docket No. 14.

Dr. Marshal Rosarios, a doctor with Bay Area, a medical care provider, performed surgery on a patient insured by Principal, a medical insurance provider. FAC ¶¶ 19, 23. Pursuant to the patient's contract with Principal, Principal was required to pay 60% of the billed price for qualified surgical procedures. Id. ¶ 29; Sullivan Decl. Ex. A (patient's employmee benefit plan).[1] Prior to the scheduled surgery, on March 7, 2011, Brooke Alvarez, a Bay Area employee spoke with employees of Principal via telephone. Id. ¶ 21. Principal stated that (1) the patient was covered under Principal insurance; and (2) no pre-authorization was necessary for the surgery the patient was scheduled to undergo. Id. ¶¶ 22-23. Bay Area billed Principal for the patient's surgery, but Principal paid only $26,091.73 of the $250,500 bill, which is approximately 10% of the bill. Id. ¶¶ 24, 7. Pursuant to Principal's agreement with Bay Area, however, Principal was required to pay 60% of the cost of approved surgical procedures for out-of-contract providers, such as Bay Area. Id. ¶ 5 Bay Area is owed $104,000 but seeks to recover only $74,500. Id. ¶ 34.

## II. LEGAL STANDARDS

### A. Motion To Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In considering whether the complaint is sufficient to state a claim, the court accepts as true all of the factual allegations contained in the complaint. Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989). However, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a

---

[1] Because Bay Area has referenced the plan documents in the FAC (FAC ¶ 29) and does not contest their authenticity, the court may consider them when reviewing Principal's motion to dismiss. See Anderson v. Clow, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### B. ERISA Complete Preemption

ERISA is a comprehensive legislative scheme intended to protect the interests of participants in employee benefit plans and their beneficiaries. Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). One distinctive feature of ERISA is the integrated enforcement mechanism provided under 29 U.S.C. §1132(a), which provides ten "carefully integrated civil enforcement provisions." Id. (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987)). Congress "clearly manifested an intent" to completely preempt causes of action within the scope of § 1132(a). Metropolitan Life Insurance, 481 U.S. at 66.

Under Davila, a state law claim is completely preempted by ERISA under 29 U.S.C. § 1132(a)'s comprehensive legislative scheme if the state law claim meets a two-prong test. See Marin General Hospital, 581 F.3d at 947 (9th Cir. 2009) (citing Davila, 542 U.S. at 210-12). A state law cause of action is completely pre-empted "only if both prongs of the [Davila] test are satisfied." Marin General Hospital, 581 F.3d at 947 (emphasis added).

The first Davila prong asks "whether a plaintiff seeking to assert a state law claim 'at some point in time, could have brought [the] claim under [29 U.S.C. § 1132(a)(l)(B)].'" Marin General Hospital, 581 F.3d at 947 (quoting Davila, 542 U.S. at 210). Section 1132(a)(l)(B) provides: "A civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The second Davila prong asks whether there is no other legal duty, independent of ERISA, that is implicated by a defendant's actions."' Marin General Hospital, 581 F.3d at 949 (quoting Davila, 542 U.S. at 210). For example, an employer-sponsored health insurance plan between a patient and a medical insurer generally does not create legal duties independent of ERISA, but a contract between a medical service provider and a medical insurer creates legal duties independent of ERISA. Id. at

3

950. In sum, if a state law cause of action could have been brought under 29 U.S.C. § 1132(a)(l)(B) and does not create a legal duty independent of ERISA, the state law cause of action is completely preempted.

### III. DISCUSSION

Principal argues that the FAC must be dismissed because the causes of action are completely preempted[2] by ERISA and Bay Area has failed to allege any facts that would support a finding that that an agreement independent of an ERISA-governed employee medical benefit plan exists between defendant Principal Life and Plaintiff.

**A. Preemption**

**1. Breach of Contract**

Bay Area's FAC alleges breach of a contract created between Bay Area and Principal during a phone conversation between a Bay Area employee and a Principal employee. FAC ¶ 33 (alleging that Principal breached the contract described in FAC ¶¶ 21-25, which describe the telephone conversation). The Principal employee allegedly (1) told Bay Area that the patient was insured, and (2) told Bay Area that the surgery did not require preauthorization. Id. ¶¶ 21-23. Bay Area also alleges that pursuant to Principal's agreement with Bay Area, Principal was required to pay 60% of the cost of approved surgical procedures for out-of-contract providers, such as Bay Area. Id.¶ 5.

Where a cause of action arises from an alleged contract between a provider and an insurer, the first Davila prong is not satisfied, because at no point in time could the provider have brought the

---

[2] Principal argues that because the state action "relates to" the patient's ERISA plan, it is completely preempted. As Bay Area correctly points out, the question whether a law or claim "relates to" an ERISA plan is not the test for complete preemption under § 502(a)(1)(B). Rather, it is the test for conflict preemption under § 514(a). See Marin General Hospital v. Modesto & Empire Traction Co., 581 F.3d 941, 949. In its reply, Principal argues that "[t[he distinction [between complete and conflict preemption] is not relevant to a motion to dismiss in which a defendant is asserting preemption defensively and not as the basis of the court's subject matter jurisdiction" and cites to Marin General Hospital in support. Reply at 5. The portion of Marin General Hospital cited by Principal details the difference between complete preemption and conflict preemption and the importance of that difference for determining the federal court's subject matter jurisdiction; it does not state that the difference is not relevant to a motion to dismiss. See Marin General Hospital, 581 F.3d at 945-46. Thus, Principal has not cited any authority in support of its argument that it is harmless to conflate conflict and complete preemption in this motion. Because Principal's motion exclusively and repeatedly refers to complete preemption, and Bay Area's opposition addresses complete preemption, this Order determines whether Principal has demonstrated the FAC is completely preempted and does not address whether Principal has raised a conflict preemption defense.

4
Case No.: 5:12-cv-01140 EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

claim as an ERISA plan "participant or beneficiary . . . to recover benefits . . . , to enforce . . . rights . . . , or to clarify . . . rights to future benefits under the terms of the plan," pursuant to 29 U.S.C. § 1132(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B); Marin General Hospital, 581 F.3d at 947. Furthermore, a cause of action arising from contracts between medical service providers and insurance companies also fails the second prong of the Davila test. "The question under the second prong of Davila is whether the complaint relies on a legal duty that arises independently of ERISA." Marin General Hospital, 581 F.3d at 950. Legal obligations that arise from contracts between medical service providers and medical insurers do not arise from ERISA, even when the insurer is acting as an ERISA plan administrator. Id. It is immaterial that the plaintiff might seek the same monetary relief to which a patient or patient-assignee might be entitled under ERISA. Id. "Accordingly, where a medical service provider's cause of action arises from the medical service provider's agreement with an ERISA plan provider, the cause of action fails both the first and second prongs of the Davila test and is not subject to ERISA complete preemption under 29 U.S.C. § 1132(a)." Bay Area Surgical Management, LLC, v. Blue Cross Blue Shield of Minnesota Inc., No. 12–CV–0848–LHK, 2012 WL 2919388, at *7 (N.D. Cal. July 17, 2012).

Here, Bay Area's breach of contract claim arises from a contract between Principal and Bay Area. Therefore, this cause of action could not have been brought by the patient against Blue Cross under § 1132(a)(1)(B), failing the first prong of the Davila test. See Marin General Hospital, 581 F.3d at 947; Blue Cross, 2012 WL 2919388, at *7. Additionally, this cause of action arises from ERISA-independent legal duties created by Principal's alleged entry into a contract with Bay Area, failing the second prong of the Davila test. See Marin General Hospital, 581 F.3d at 950. The fact that Bay Area could have chosen to seek the same monetary relief it now seeks under the patient's assigned ERISA rights does not impinge Bay Area's right to seek that relief on the independent grounds now before the court. See id.; Blue Cross, 2012 WL 2919388, at *7. Thus, Bay Area's action for breach of contract pleaded in the FAC is not completely preempted under § 1132(a) of ERISA. Thus, Principal's motion to dismiss the breach of contract claim in the FAC on this basis is DENIED.

### 2. UCL Claim

Like Bay Area's cause of action for breach of contract, Bay Area's UCL claim alleges breach of the contract between Bay Area and Principal made over the telephone. See FAC ¶ 39 ("the contract described herein"); see also FAC ¶¶ 40–43 (alleging other illegal acts committed in furtherance of the alleged breach of telephone contract). Thus, Bay Area's UCL claim from alleged contract terms to which Principal and Bay Area agreed does not arise from the patient's medical insurance contract with Principal.

Accordingly, Bay Area's UCL claim is not preempted under § 1132(a) of ERISA because this claim could not have been brought by the patient against Blue Cross under § 1132(a)(1)(B), and also because this claim arises from ERISA-independent legal duties created by Principal's alleged entry into a contract with Bay Area. See Marin General Hospital, 581 F.3d at 947, 950; Blue Cross, 2012 WL 2919388, at *7. Thus, Principal's motion to dismiss the UCL claim in the FAC on this basis is DENIED.

### 3. Negligent Misrepresentation, Promissory Estoppel, and Equitable Estoppel

Like Bay Area's breach of contract claim and UCL claim, Bay Area's claims for negligent misrepresentation, promissory estoppel, and equitable estoppel all arise from representations made by Principal to Bay Area. Bay Area's cause of action for negligent misrepresentation alleges that during a telephone call between Principal and Bay Area, Blue Cross negligently misrepresented that "'no pre-authorization was necessary' for the surgery that the patient was scheduled to undergo." FAC ¶ 46. The negligent misrepresentation claim alleges that "[Bay Area] justifiably relied on Principal's misrepresentations . . . and went forward with the procedure, reasonably expecting to be reimbursed." Id. ¶ 48. Bay Area alleges it is owed "60% of the billed price of the surgery pursuant to the express statements from Principal," (id. ¶ 48) apparently relying on Principal's agreement with Bay Area that required Principal "to pay 60% of the cost of approved surgical procedures for out-of-contract providers, such as [Bay Area]" (id. ¶ 5).

Similarly, Bay Area's cause of action for promissory estoppel and cause of action for equitable estoppel arise from (1) the statement that Principal allegedly made to Bay Area prior to the patient's surgery that the surgery did not require pre-authorization, and (2) Principal's agreement with Bay

6
Case No.: 5:12-cv-01140 EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Area that it pay 60% of the billed price. See id. ¶¶ 53, 54 (alleging the pre-authorization and 60% payment promises that give rise to the promissory estoppel cause of action); id. ¶¶ 61, 63 (alleging statements and omissions giving rise to the equitable estoppel cause of action). Thus, Bay Area's claims for negligent misrepresentation, promissory estoppel, and equitable estoppel all arise from representations made by Principal to Bay Area, stating or implying that Principal would pay for the surgery that Bay Area planned to perform.

Accordingly, Bay Area's causes of action for negligent misrepresentation, promissory estoppel, and equitable estoppel are not preempted under § 1132(a) of ERISA for the same reasons discussed with respect to Bay Area's breach of contract claim and UCL claim. Thus, Principal's motion to dismiss the negligent misrepresentation, promissory estoppel, and equitable estoppel claims in the FAC on this basis is DENIED.

In sum, all of the FAC's five causes of action assert state law claims, and none of these five state law causes of action is completely preempted by ERISA.

**B. Failure To Plead Sufficient Facts To State a Claim**

Principal further argues that the FAC must be dismissed because it fails to allege facts sufficient to state a plausible claim that the telephone conversation created an agreement between Bay Area and Principal that required Principal to pay 60% of the cost of the surgery. Specifically, Bay Area argues that the FAC alleges in a conclusory fashion that "[p]ursuant to Principal's agreement with Bay Area, Principal was required to pay 60% of the cost of approved surgical procedures for out-of-contract providers, such as [Bay Area]." FAC ¶ 5. Additionally, the FAC only alleges that during the telephone conversation, Principal told Bay Area that the patient was insured and preauthorization was not necessary for the planned procedure, and the FAC provides no explanation as to why the statement about preauthorization amounts to a promise to pay 60% of the cost of the procedure. See id. ¶¶ 21-23, 31, 46.

Bay Area argues that for the purposes of this motion the court must accept as true its allegation that Principal entered into an agreement with Bay Area wherein Principal was required to pay 60% of the cost of the surgery.

Although in considering whether the complaint is sufficient to state a claim, the court accepts as true all of the factual allegations contained in the complaint, Gen. Conference Corp. of Seventh-Day Adventists, 887 F.2d at 230, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d at 1055 (internal quotation marks and citations omitted).

Here, Bay Area's allegation that "[p]ursuant to Principal's agreement with Bay Area, Principal was required to pay 60% of the cost of approved surgical procedures for out-of-contract providers, such as [Bay Area]" (FAC ¶ 5) is conclusory and therefore need not be accepted as true. Bay Area has not alleged any facts in support of that conclusory allegation. Thus, Bay Area has not pleaded facts sufficient to state a plausible claim that the telephone conversation between Bay Area and Principal formed an agreement that required Principal to pay 60% of the cost of the surgical procedure. All Bay Area's claims are insufficiently pleaded because, as discussed above, all Bay Area's claims depend on the existence of such an agreement and Principal's failure to pay 60% of the cost as required. Thus, Principal's motion to dismiss the FAC for failure to state a claim is GRANTED with leave to amend.

## IV. CONCLUSION

For the reasons above, Principal's motion to dismiss the FAC is GRANTED with leave to amend. Bay Area may file any amended complaint no later than 30 days from the date of this order.

IT IS SO ORDERED.

Dated: September 14, 2012



EDWARD J. DAVILA
United States District Judge